EDWARD H. DEAVITT *v.* L. J. ELDRIDGE, Trustee, et al.

May Term, 1901.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, START and WATSON, JJ.

Opinion filed August 24, 1901.

*Valueless collateral not available as an equitable offset*—If a corporation delivers to a creditor a certificate of stock solely as collateral security for the debt due him, and he takes and holds it solely as

such collateral, it is not, after it has become valueless, available as an equitable offset to the debt.

*Facts precluding a holding that the purchase of a mortgage amounted to an advancement to the mortgagor*—Two of several mortgagees under a mortgage sought to be foreclosed, purchased and took an assignment of prior mortgages relying upon the security purchased. In the absence of a finding that they did so at the request of the mortgagor, or for his benefit, the fact that they were under no legal duty to pay the prior mortgages precluded a holding that the transaction amounted to an advancement of money to the mortgagor, and such purchasers were entitled to stand in the place or the parties of whom they purchased.

CHANCERY. Caledonia County. In this case the orator sought to foreclose a mortgage upon the real estate of the Beckwith Marl Co. a corporation in bankruptcy. The defendant L. J. Eldridge, who was the trustee in bankruptcy, made no claim to any interest in the property covered by the mortgage and had filed a disclaimer in the Bankruptcy Court. The claims of various individuals were secured by the mortgage. Some of these claims, including claims of Sias Randall and A. C. Randall, were purchased by the orator before bringing his bill to foreclose, and the other mortgagees, among whom were F. G. Bundy and H. A. Blake, were made defendants. The orator after the commencement of the foreclosure proceedings purchased of Sias Randall certain notes running to A. C. Randall. Several of the defendants filed a cross-bill setting up a chattel mortgage given by the Marl Co. to secure the same claims secured by the real estate mortgage and in part covering the same property (machinery), and asking for a determination of all rights under both mortgages and for a sale of the property both real and personal. The property was of such a character and so situated that the interests of all concerned would be best served if the same was sold as a whole.

The cause came on for hearing upon bill, cross-bill, answers and replications, master's report and exceptions

thereto, at chambers, before Stafford, Chancellor, March 7, 1901, whereupon without hearing and strictly *pro forma,* it was ordered and decreed that there be entered a decree of fore-closure against the real estate described in the orator's bill so far as the Beckwith Marl Co. was concerned, and that upon the cross-bill there be entered a decree for the sale of all the property both real and personal and for the division of the avails of the same among the persons entitled thereto. The decree in respect to such division accorded with the opinion herein except in respect to the mistake in the decretal order noted at the close of the opinion. The orator appealed.

In the Supreme Court the distribution of the proceeds of the sale decreed to be made was the only matter contested.

*Edward H. Deavitt,* orator, *pro se.*

*May & Simonds* for the defendants.

START, J.     The Beckwith Marl or Carbonate of Lime Co. executed a mortgage of its property to certain parties to secure said parties for any and all advances or endorsements before or thereafter to be made for the benefit of said company, and the petition in this cause is brought for the purpose of foreclosing that mortgage. The questions in issue relate to the extent to which each mortgagee, or his assign, is entitled to share in the mortgaged property. It appears, that, after the execution of the mortgage, the company issued certificates of its capital stock for three thousand dollars to defendant F. G. Bundy, one of the mortgagees, and placed the same in his hands as collateral security for a loan of a like amount by him to the company; that he had the option to purchase the stock but never elected to do so; and that the stock is now of no value.

The orator insists that the sum found due from the company to Bundy is subject to an offset of the stock so delivered, and that Bundy is not entitled to any part of the mortgage

security.   From the facts found by the master, it is clear that Bundy never was indebted to the company for the stock issued to, and held by, him.   He was not a subscriber to, or purchaser of, it. He only held it as collateral security for the payment of the money loaned by him to the company, and the same is not available as an equitable offset to the money due and owing from the company.

At the time the mortgage sought to be foreclosed was executed, the mortgaged property was subject to two prior mortgages which had not been fully paid, and defendants H. A. Blake and F. G. Bundy thereafter purchased one of the prior mortgages with their private funds, relying upon the mortgage security so purchased, and took an assignment of the same. Defendant Bundy, under like conditions purchased and took an assignment of the other mortgage.   They claim that they must be paid the sums due upon the mortgages so purchased before the other creditors of the company are entitled to share in the proceeds of the mortgage security, while some of the parties to this action contend, that the position of Blake and Bundy in respect to the purchased mortgages is that of creditors who have advanced money at the request of, and for the benefit of, the company; that the mortgages so purchased are extinguished; and that Blake and Bundy can share in the security only in common with the other creditors.   But we think the rights of Blake and Bundy under the prior mortgages are not thus limited.   The finding that they purchased and took an assignment of the mortgages, relying upon the security purchased, and the absence of a finding that they did so at the request of, or for the benefit of, the company, and the fact that they were under no legal duty to pay the prior mortgages, precludes a holding that the transaction was an advancement of money to the company.   Therefore, they are entitled to stand in the place of the parties of whom they purchased, and

the proceeds of the property covered by the prior mortgages must be first applied in payment of the sums due upon these mortgages.

The claims purchased by the orator of A. C. Randall, before the filing of his bill of complaint, were overdue at the time of the purchase, and were greater in amount than the claims in favor of the company and against A. C. Randall, and were subject to the deductions made by the court below. It is therefore unnecessary to consider whether the notes purchased by the orator of A. C. Randall, or Sias Randall, after the filing of the bill of complaint, were subject to an offset; nor is it necessary to consider who furnished to the company the money for which the notes were executed and delivered to A. C. Randall.

There is evidently a mistake in the decretal order. By it, the orator is allowed $3,302.90, less $365.89 due from A. C. Randall to the company. He should have been allowed $3,521.45, less $365.89, or a balance of $3,155.56. For the purpose of correcting this error, the decree must be reversed.

*Reversed and remanded with mandate.*